# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| ROGER MARTIN FRANDSEN,<br><br>Plaintiff,<br><br>vs.<br><br>DEPUTY MATTHEW DARLINGTON, et al.,<br><br>Defendants. | Cause No. CV-08-026-GF-SEH-RKS<br><br><br>FINDINGS AND RECOMMENDATION GRANTING DEFENDANTS CASCADE COUNTY AND CITY OF GREAT FALLS'S MOTIONS FOR SUMMARY JUDGMENT |

Defendants Cascade County Sheriff's Department and City of Great Falls Police Department officers did not violate Plaintiff Mr. Fransden's Fourth Amendment right to be free from unreasonable seizure. The factual disputes raised by Mr. Fransden are not material. Even resolving those disputes in Mr. Fransden's favor does not create genuine issues of material fact to proceed to trial on an excessive use of force claim under the Fourth Amendment. Defendant's motions for summary judgment should be granted.

## I.    Status

Plaintiff Roger Frandsen is a prisoner who filed this action pro se

under 42 U.S.C. § 1983.  Jurisdiction lies under 28 U.S.C. § 1331.  This case was assigned to the undersigned for the submission of proposed findings and recommendations by District Judge Sam E. Haddon.  28 U.S.C. § 636(b); (C.D. 45).  Mr. Fransden's claims have been limited to his excessive use of force claim against Cascade County Sheriff's Department Deputies Darlington and Mellott and Sergeant Van Dyken, as well as Great Falls Police Department (GFPD) Sergeant Baumann and Bennett, and Officers Bragg, Kasuske, and Palmer.  (C.D. 31) Defendant Officer Hedges has been dismissed from the case.  (C.D. 81) Pending are Defendant Cascade County and City of Great Falls' motions for summary judgment.  (C.D. 51,52)

## II.   Facts

On January 18, 2008, Mr. Fransden led Cascade County Sheriff's Deputy Darlington and Sergeant Van Dyken, along with GFPD Officers Kasuske, Bragg, and Palmer, on a pursuit through Great Falls, Montana.  (C.D. 54-2, p.3) Mr. Fransden was wanted for escape from the Great Falls Prerelease Center at the time, and was considered armed, dangerous, and an extreme officer caution.  (C.D. 54-2, p.2) Deputy Darlington first encountered Mr. Fransden at a dead-end street

where GFPD Officer Palmer was stopped near Mr. Fransden's vehicle.
(C.D.54-4) The officers were aware that Mr. Fransden had previously
been involved in another high-speed police pursuit in 2004.  (C.D. 54-4;
57-5-57-9)  Mr. Fransden rammed a police vehicle during that pursuit,
which resulted in charges of felony criminal endangerment, attempting
to elude police, and assault on a peace officer.  (C.D. 54-1, pp.17-18) Mr.
Fransden's escape charges pertinent to this matter arise from his
convictions and punishment for the 2004 charges.  (C.D. 54-1, pp. 23-24)

Mr. Fransden fled the dead-end in his vehicle shortly after Deputy
Darlington arrived.  Mr. Fransden alleges Deputy Darlington rammed
his vehicle while he was attempting to flee. (C.D. 75, p.2).  Mr.
Fransden, as far as the record reflects, does not allege that he was
injured in any way by that collision.  Deputy Darlington claims Mr.
Fransden hit his patrol truck while fleeing.  (C.D.54-4)  Mr. Fransden
pled no contest to felony assault on an officer for hitting Deputy
Darlington's truck.  (C.D. 54-9) Mr. Fransden claims he only pled no
contest to avoid additional felony charges.  (C.D. 75, p. 42-43) Mr.
Fransden also states that his excessive use of force claim stems mainly
from the events that occurred after his vehicle was stopped following

the collision.  (C.D. 75, p. 83)

After the collision, Mr. Fransden continued to speed through the snowy streets, losing control of his vehicle more than once and admittedly disregarding traffic lights and other vehicles.  (C.D. 54-1) Mr. Fransden drove over stop sticks during the pursuit, and three of his tires deflated.  (C.D. 54-2) Mr. Fransden's vehicle eventually stalled and came to a stop when he ran out of gas.   He refused to exit the vehicle and show his hands.  (C.D. 54-1, p.41-43)

Mr. Fransden opened his car door twice to shout at officers after stopping, but refused to exit his vehicle.  (C.D.57-5, p.5; C.D. 54-1, p.41) Officers had difficulty seeing inside the vehicle, and did not know if Mr. Fransden had a weapon.  (C.D. 54-1, 54-2, 54-4) Sergeant Van Dyken shot out the back window with two bean bag shotgun rounds.  (C.D. 54-2) GFPD Officer Kasuske then shot Mr. Fransden with a taser, which did not appear to make grounding contact.  (C.D. 57-5) GFPD Sergeant Bennett shot Mr. Fransden with another taser.  (C.D. 57-6) Officers claim neither taser made grounding contact, while Mr. Fransden claims two of the four probes made contact.  (C.D. 75, pp. 47-48) GFPD Sergeant Baumann then shot Mr. Fransden in the right thigh with a

bean bag shotgun round.  (C.D.75, p.46-47) Mr. Fransden was then removed from his vehicle and taken to the ground.  (C.D. 54-2, 54-4) One of Mr. Fransden's handcuffs came free and he was taken to the ground again to secure his handcuffs.  (C.D. 75)  Officers claim Mr. Fransden continued to forcibly resist arrest during and after his removal from the vehicle.  (C.D. 54-2, 54-4; 57) Mr. Fransden denies forcibly resisting arrest.  (C.D. 75, pp. 53-54)

Mr. Fransden refused transport to the Emergency Room after his arrest.  (C.D. 54-8)  Emergency Services records show Mr. Fransden's right thigh was discolored and tender to the touch immediately after his arrest, but he could walk and stand on his right leg.  (C.D.54-8) Medical records from Cascade County Detention Center, Spectrum Medical, Inc., show Mr. Fransden's left ring finger was bruised and swollen five days after his arrest.  (C.D. 54-8) Mr. Fransden refused X-rays for his finger, telling the medical examiner that he "popped it back into place myself." (C.D. 54-8) Mr. Fransden also claims that his knee, foot, and back were injured due to Defendants' excessive force.  He has not sought medical treatment for these injuries.  (C.D. 54-1, p. 73-81) When his deposition was taken on March 29, 2010, Mr. Fransden was lifting weights three

days per week, and could bench press 300 pounds.  (C.D. 54-1, pp.93-95)

Mr. Fransden also has not sought treatment for his self-diagnosed mental injuries, PTSD, or antisocial personality disorder that he attributes to this incident.  (C.D. 54-1, p.86-89)

## III.  <u>DISCUSSION</u>

## A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if " the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-250.

The moving party has the burden of proving there are no disputed material facts.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the non-moving party may not rest

upon its pleadings, but must come forward with specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial as to the elements essential to the non-moving party's case.  Fed.R.Civ.P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256. In so doing, the non-movant must specifically identify evidence of record, as opposed to general averments, which support his claim.  <u>Celotex</u>, 477 U.S. at 322.  The mere existence of some factual dispute will not defeat a properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 248.

## B.  EXCESSIVE USE OF FORCE

Excessive use of force claims against police officers are analyzed under the "objective reasonableness" standard of the Fourth Amendment's prohibition against unreasonable seizures of the person. <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989).  An officer's use of excessive force during arrest is determined by " the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Id.</u> at 396. For each excessive force claim, courts consider the severity of the crime

committed, whether the suspect is resisting or evading arrest, and, most importantly (<u>Smith v. City of Hemet</u>, 394 F.3d 689, 702 (9th Cir. 2005)(en banc)), whether the suspect poses an immediate threat to officers or others' safety.  <u>Graham</u>, 490 U.S. at 396.  Other factors considered under a totality of the circumstances analysis include: the quantum of force used, the availability of alternative methods of detaining the suspect, and the suspect's mental state.  <u>Luchtel v. Hagemann</u>, __F.3d__, 2010 WL 3911282, 16845 (9th Cir. 2010) (internal citations omitted).

Police officers are required to use an objectively reasonable level of force when arresting suspects. <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1436 (9th Cir. 1993)).  Although the determination of reasonableness may initially appear a more appropriate question for the jury, the issue may be decided as a matter of law if, after resolving all factual disputes in favor of the plaintiff, the force was objectively reasonable.  <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 651 n.1 (9th Cir. 2001) (<i>citing</i> <u>Scott v. Henrich</u>, 39 F.3d 912, 915 (9th Cir. 1994).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396.  Police

officers are not required to use the least intrusive means available to

effectuate an arrest.  <u>Scott</u>, 39 F.3d at 915.  Judges must make

"allowance for the fact that police officers are often forced to make split-

second judgments—in circumstances that are tense, uncertain, and

rapidly evolving—about the amount of force that is necessary in a

particular situation." <u>Graham</u>, 490 U.S. at 397.

Finally, mere allegations of pain without any supporting evidence

of actual injury are insufficient to sustain an excessive force claim.

<u>Foster v. Metropolitan Airports Commn.</u>, 914 F.2d 1076, 1082 (8th Cir.

1990).

## FACTORS

Considering the totality of the circumstances Defendants faced

pursuing Mr. Fransden, there is no genuine issue of material fact that

their use of force was objectively reasonable.  Even resolving all factual

disputes in favor of Mr. Fransden, there are no facts upon which a jury

could find Defendants' use of force was excessive under the applicable

law.  All of the reasonableness factors, especially the most important

factor of the immediate threat posed to the officers and the public,

weigh in Defendants' favor.  Mr. Fransden's excessive use of force claim against Cascade County Sheriff's Department and City of Great Falls Police Department should be dismissed.

## 1.  Severity of the Crime

The severity of the crime committed by Mr. Fransden warrants the level of force used by Defendants.  Mr. Fransden's warrant for escape from the Prerelease Center was the impetus for stopping his vehicle on January 18, 2008.  Mr. Fransden then led several officers on a pursuit through Great Falls for twenty minutes in extremely poor weather conditions, risking the lives of other drivers, the officers, and himself.  He did not stop until his vehicle ran out of gas.  Mr. Fransden pled no contest to and was convicted of felony Assault on a Peace Officer for ramming Deputy Darlington's vehicle during his flight.  (C.D. 54-9) Mr. Fransden further resisted arrest by refusing to exit his vehicle once it stopped and he was surrounded.  The severity of the crimes committed by Mr. Fransden weigh in favor of Defendants.

## 2.  Resisting or Evading Arrest

Mr. Fransden's Felony Assault on a Peace Officer conviction evidences the extent to which he resisted arrest.  Mr. Fransden argues

his no contest plea and subsequent conviction were coerced by the Cascade County Attorney.  (C.D. 75, 42-43) As explained in prior order C.D. 19, this claim is barred by the Heck-doctrine.  Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Mr. Fransden further resisted arrest after he was surrounded by police officers by refusing to exit his vehicle and show his hands.  Even assuming Mr. Fransden did in fact open his car door twice to tell Defendants he was unarmed, this does not excuse the fact that he refused to exit his vehicle and show his hands when ordered to do so.  Mr. Fransden's subjective reasons for resisting arrest do not change the fact that he resisted arrest at every possible turn of events in this case.  This factor weighs in favor of dismissal.

**3.  Mr. Fransden's Immediate Threat to Officers or Others' Safety**

Whether Mr. Fransden posed an immediate threat to the arresting officers or others' safety is the most important of the above-mentioned factors.  Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005)(en banc).  As discussed above, by fleeing the scene of his traffic stop, Mr. Fransden put the officers, other drivers, and himself in danger.  Mr. Fransden admitted that his actions could have caused serious injury to

someone, and his sole intent was to evade the police.  (C.D. 54-1, p. 38)

Mr. Fransden directly endangered Deputy Darlington when he rammed

his patrol vehicle.  There is no doubt that Mr. Fransden's actions caused

an immediate and significant threat to the safety of the Defendants and

the public.

## 4. Quantum of Force Used

As only GFPD officers fired tasers and a bean bag shotgun round

at Mr. Fransden, the quantum of force used by GFPD will be analyzed

separately from Cascade County Defendants.

### *Great Falls Police Department*

### Use of Tasers

The use of a taser is an intermediate level of force which "must be

justified by a strong government interest that *compels* the employment

of such force." Bryan v. McPherson, 590 F.3d 767, 774-75 (internal

quotation marks and citation omitted).  Use of a taser is reasonable in a

tense and uncertain traffic stop when the suspect is "hostile, belligerent,

and uncooperative."  Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir.

2004).

Taser deployment is reasonable even when the suspect commits

"relatively minor misdemeanors" if all the other factors support

intermediate force.  <u>Lindsay v. Kiernan</u>, 378 Fed.Appx. 606, 608, (9th

Cir. 2010).  In <u>Lindsay</u>, Lindsay was heavily intoxicated and

threatening a young convenience store clerk who refused to sell him

alcohol.  <u>Id.</u> at 607.  Officers tased Lindsay twice when he broke free

from custody, pushed through several officers and attempted to re-enter

the store.  <u>Id.</u>  Dismissal on summary judgment was appropriate for

Lindsay's § 1983 excessive use of force claim because he repeatedly

refused to comply with officers' orders, physically resisted arrest, was

intoxicated and belligerent.  <u>Id.</u> at 609.

Summary judgment was also appropriate when officers

permanently injured a woman who actively resisted arrest while high

on cocaine, suicidal, and delusional.  <u>Luchtel</u> at 16846.  In <u>Luchtel</u>, Mrs.

Luchtel was taken down by two large male officers.  In the struggle to

handcuff her, she suffered a dislocated shoulder and torn shoulder

ligaments, causing permanent damage.  The force used against Mrs.

Luchtel was objectively reasonable partially because her "own conduct

invited the use of force and made it more difficult for officers to take her

into custody."  <u>Id.</u> at 16850.

Mr. Fransden was shot in the thigh with a bean bag shotgun round and was shot at with two tasers (the grounding of which is disputed) by GFPD Defendants.  Mr. Fransden was also taken to the ground twice by both GFPD and Cascade County officers–once immediately after being pulled from his vehicle, and again after one of his arms came free of his handcuffs.  Video of the arrest shows several officers surrounding Mr. Fransden and holding him down while he was arrested, and again a second time when one of his hands came free. (C.D. 75)  Mr. Fransden claims Defendants kicked him, kneed him, and pushed his face through the snow into the mud while handcuffing him. There is no evidence on the video that any of the Defendants did any of these things, or used any more force than necessary to subdue Mr. Fransden.   Mr. Fransden's medical records demonstrate that his injuries from this force included an injured finger and bruised thigh.

Similar to Ms. Luchtel, Mr. Fransden's own conduct invited if not directly caused the force used against him and made it more difficult to bring him into custody.  Unlike Ms. Luchtel, Mr. Fransden was an escaped felon with a history of assaulting and fleeing from police officers.  He also has no medical evidence suggesting he sustained any

permanent injury from Defendants' actions.  If summary judgment was appropriate for Ms. Luchtel's excessive use of force claim, it certainly is for Mr. Fransden's claim.

Comparing Mr. Fransden's claim to Mr. Lindsay's also warrants dismissal on summary judgment.  Mr. Lindsay committed minor misdemeanors and officers knew of no criminal history when they tased him twice for resisting arrest.  <u>Lindsay</u>, 378 Fed.Appx. at 608-609. Here, multiple officers attest under oath that the tasers fired at Mr. Fransden did not make grounding contact.  Even disregarding that testimony and assuming, as Mr. Fransden says, that he was tased, the Defendants were justified in doing so as a matter of law.

### *Cascade County Sheriff's Department*

Cascade County Defendants' quantum of force consisted of helping GFPD Officers remove Mr. Fransden from his vehicle and take him down twice to handcuff him.  Deputy Darlington stated in his affidavit that he was "prepared to use his weapon" just prior to Mr. Fransden being pulled from his vehicle because he could not see Mr. Fransden's hands.  (C.D. 54-4, p. 5) Given that the intermediate level of force used by GFPD was not excessive, the lesser quantum of force used by

Cascade County Defendants was certainly not excessive.

## 5.  Availability of Alternative Methods

Mr. Fransden's evasion and resistance gave Defendants few alternative methods to effectuate an arrest with less force than that used against him.  Moreover, "[p]olice officers need not use the least intrusive means available to them."  Firing tasers and a bean bag shot gun round, as well as the two take-downs of Mr. Fransden are exactly the kind of "split-second judgments" for which judges must make allowance when reviewing the amount and type of force used by officers during an arrest.  <u>Graham</u>, 490 U.S. at 397.  Given the tense and uncertain circumstances Mr. Fransden created by fleeing, there were few if any alternative methods Defendants could have used to safely arrest him.

## 6.  Mr. Fransden's Mental State

Mr. Fransden admits there was no way for Defendants to know his mental state before he was arrested.  (C.D. 54-1, p. 46-47)  Mr. Fransden also admits that he was he was desperate not to go back to prison.  <u>Id.</u>  Although Mr. Fransden stated in his deposition that he intended to surrender just before he was tased, he never expressed that

intention to Defendants. (C.D. 54-1, p. 48) Mr. Fransden's objective actions were the only evidence Defendants had of his mental state.  His actions suggested surrender was not his intention.  Based on Mr. Fransden's mental state as it reasonably appeared to Defendants, this factor also weighs in favor of dismissal.

## C.   INJURIES

Mr. Fransden alleges extensive physical and emotional injury as a result of Defendants' use of force during his arrest.  His medical records, however, show only an injured finger and bruised thigh–for both of which he declined treatment.  Allegations of pain without evidence of more permanent injury, such as medical records, are insufficient to support Mr. Fransden's alleged injuries.  <u>Foster</u>, 914 F.2d at 1082.

## D.   QUALIFIED IMMUNITY

Qualified immunity shields an officer from personal liability when he reasonably believes that his conduct adheres to the law.  <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 823 (U.S.,2009).  The doctrine balances the accountability of public officials when they violate their duties with their protection from liability when they execute their duties reasonably.  <u>Id.</u> at 815.  Qualified immunity also protects "all but the

plainly incompetent or those who knowingly violate the law." <u>Malley v.</u>
<u>Briggs</u>, 475 U.S. 335, 341 (1986).

Government officials are not protected by qualified immunity if:
(1) the facts alleged by the plaintiff constitute deprivation of a
constitutional right, and (2) the constitutional right was clearly
established at the time of the defendant's misconduct.  <u>Pearson</u>, 129
S.Ct. at 815-816.  Even if some degree of force used in subduing a
suspect is excessive, officers are entitled to qualified immunity if a
reasonable officer could have thought the force used was required.
<u>Lutchel</u> at 16850.

Even resolving all factual disputes in favor of Mr. Fransden, his
excessive use of force claim does not constitute a Fourth Amendment
violation.  Thus, step one of the qualified immunity analysis is not
satisfied, and step two need not be analyzed.  Defendants are entitled to
qualified immunity.

## CONCLUSION

None of the factual disputes raised by Mr. Fransden are material.
Even if all disputes were decided in Mr. Fransden's favor, his Fourth

Amendment rights were not violated by Defendants. Mr. Fransden's

excessive use of force claim against Cascade County and City of Great

Falls Defendants should be dismissed.

## Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in
> the district-court action, or who was determined to be
> financially unable to obtain an adequate defense in a
> criminal case, may proceed on appeal in forma pauperis
> without further authorization, unless:
> > (A) the district court-before or after the notice of appeal
> > is filed-certifies that the appeal is not taken in good
> > faith or finds that the party is not otherwise entitled to
> > proceed in forma pauperis and states in writing its
> > reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not

be taken in forma pauperis if the trial court certifies in writing that it is

not taken in good faith."  The good faith standard is an objective one.

*Coppedge v. United States*, 369 U.S. 438, 445 (1962).  A plaintiff

satisfies the "good faith" requirement if he or she seeks review of any

issue that is "not frivolous."  *Gardner v. Pogue*, 558 F.2d 548, 551 (9th

Cir. 1977) (quoting *Coppedge*, 369 U.S. at 445).  For purposes of section

1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984).  A complaint lacks an arguable basis in law if controlling authority requires "a holding that the facts as alleged fail to establish even an arguable claim as a matter of law." *Guti v. INS*, 908 F.2d 495, 496 (9th Cir. 1990).

Mr. Fransden failed to produce sufficient evidence to prove his claim, therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

## Address Changes

At all times during the pendency of this action, Mr. Fransden SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except if Mr. Fransden has been released from custody, the notice should so indicate. The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal

of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

The Court issues the following:

## RECOMMENDATIONS

1.    Defendant Cascade County's Motion for Summary Judgment (Documents 51, 52, and 54) should be **GRANTED;**

2.    Defendant City of Great Falls Motion for Summary Judgment (Documents 55-57) should be **GRANTED;**

3.    The Clerk of Court should be directed to enter judgment in favor of Defendants and close this case.

4.    The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Mr. Fransden failed to produce sufficient evidence to support his claims and as such no reasonable person could suppose that an appeal would have merit.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within ten

(10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 3rd day of November, 2010.

/s/Keith Strong
Keith Strong
United States Magistrate Judge